## No. 11,517.

WIDOW V. LACOSTE ET AL. VS. WIDOW A. GUIDROZ ET AL.

1.  Where a marriage duly solemnized is sought to be annulled on the ground that the consent given to it by one of the spouses was procured by violence and threats, the *status* of the parties before the court for the time being is that of husband and wife, and neither is a competent witness in the suit. For the same reason both parties, though minors at the time of the celebration of the marriage, are authorized to stand in judgment without the intervention of tutors. The mother of the plaintiff has no personal interest in the suit, for even if her consent to the marriage had been extorted, that fact would not invalidate it.

Lacoste et al. vs. Guidroz et al.

2. A marriage the consent to which was produced under the influence of error, violence or threats is not absolutely null—it is not void but voidable.

3. Where a husband seeks to annul his marriage on the ground that his consent thereto had been procured by violence and by threats of criminal prosecution for a crime he had not committed, and the evidence shows that affidavit and prosecution were entirely prospective and looked evidently to a charge under Act No. 134 of 1890, or under Sec. 787 of the Revised Statutes, and that at the time of the celebration of the marriage no violence or threats were brought to bear on him, but that he apparently gave free verbal consent to the marriage and signed the marriage certificate, the court will hold the plaintiff to proof, that in order to obtain his assent to the marriage mere forms of law were about to be used to cover coercive proceedings for an unjust and illegal cause. Threats of any measure authorized by law and the circumstances of the case would not invalidate the contract.

4. Engagements made through error, violence, fraud or menace are not absolutely null, but are voidable by the parties who have contracted under the influence of such error, violence or menace. When, therefore, it is charged by one of the parties to a marriage, duly celebrated and duly evidenced by marriage certificate, that his consent thereto was given under the influence of fear and threats, that the marriage was a nullity and should be so decreed, his *status* before the court, during the suit, is that of a *husband*, and he is not a competent witness in the case.

5. If the threats used to bring about a marriage were threats only of doing that which the party using them had a right to do (threats, for instance, of any measure authorized by law and the circumstances of the case), they would not invalidate the contract, but the mere forms of law to cover coercive proceedings for an unjust and illegal cause would invalidate a contract made under their pressure.

6. Minors who have contracted marriage are authorized to stand in judgment in an action to annul the marriage without the intervention of their tutors.

7. The want of consent of the mother and tutrix of a minor to his marriage is no ground for its annulment.

APPEAL from the Civil District Court, Parish of Orleans. *Monroe, J.*

Action that an act of marriage passed on the 16th March, 1893, before the judge of the Second City Court, between Honoré Lacoste and Therese Guidroz, be declared null and void *ab initio*.

Judgment was rendered in the District Court in favor of the defendants, rejecting the demands of plaintiffs and dismissing their suit.

*Albert Voorhies* for Plaintiffs and Appellants.

*Paul L. Fourchy* for Defendants and Appellees.

The opinion of the court was delivered by

NICHOLLS, C. J.   The first question which meets us in the investi-·gation of the case is the correctness or incorrectness of the exclusion by the court of the testimony of Honoré Lacoste, the plaintiff.

*Art. 2281* of the Revised Civil Code, amended and re-enacted by Act No. 59 of 1888, is as follows:

"The competent witness of any covenant or fact, whatever it may be, in civil matters, is a person of proper understanding.  The husband can not be a witness for or against his wife, nor the wife for or against her husband; provided, that in any case where the husband or wife may be joined as plaintiffs or defendants and have a separate interest, they shall be competent witnesses for or against their separate interests therein.   Provided further, that in all cases where either spouse has acted as agent for the other spouse, such spouse so acting as agent shall be a competent witness as to all transactions arising from, involved in, or connected with such agency.   That no statement or statements of either party in suits for separation of property and separation from bed and board or divorce shall be received in evidence."

Plaintiff's counsel contends that the exclusion of the testimony "was a misapplication of the article cited, which contemplated an existing, undisputed marriage, during which, on grounds of public policy, the spouses are not allowed to testify for or against each other—that in the case at bar the issue was whether there was a marriage.   It was marriage *vel non*.   That to exclude either party from testifying is to prejudge the case—that it is a petition of principle to hold, in anticipation of the judgment, that there is a valid existing marriage disqualifying the spouses as witnesses, since the decree pronouncing its nullity *ab initio* demonstrates that they were never married in the eye of the law—never husband and wife.   That a minor who signs an act of marriage to which he does not give a consent free and deliberate, but which he does sign under compulsion, has not been married, and the policy of the law, instead of shutting out his testimony, runs in the opposite direction."

Called to pass upon this question on appeal, we do so under the light of the pleadings and the testimony in the record other than that rejected.

The present action is grounded upon the claim that the consent which the plaintiff gave to the marriage was not free and de-

liberate, but forced upon him by violence and under the operation of fear on his part of a threatened prosecution for a felony which he had not committed, and of which he was innocent. It is neither asserted nor shown that an affidavit was ever made against him, or that he had ever been arrested on a criminal charge. We are satisfied from the evidence in the case that at the time of the ceremony consent was given to the marriage by both Honoré Lacoste and his mother. What the character of that consent was, and what its result and effect was upon the parties after it was given, and under the circumstances it was given, is what we are now to consider.

We have before us a marriage certificate in proper form, signed by the parties, the necessary witnesses and the officiating judge, declaring that the parties had consented to a marriage, and it is (*dehors* the certificate) established affirmatively that both Honoré Lacoste and Miss Guidroz additionally gave consent, so far as words could evidence it.

Independently of this it is urged that though both mother and son gave their consent, it was only conditionally given, the condition being that a divorce should be immediately granted to the husband. We think it clearly intimated that had a consent divorce been obtained, the present litigation would not have arisen.

The actual ground of complaint seems to rest rather upon the breach of a promise to grant a divorce than upon the want of consent to the marriage, produced by fear, violence or threats, though in the petition the latter is assigned as the direct cause of action.

Plaintiff's position is, that in spite of this condition of facts, he has the right by reason of the allegations and prayer of his petition to stand before us *prima facie* as not married, and that until he shall have been judicially declared to have been legally married, he is entitled to testify as to the fact of marriage, and as to the circumstances leading up to his apparent consent.

We can not see matters in that light. There is no doubt, as we have said, that a consent of some kind was given by the plaintiff, and we have to deal not with an absolute want of consent, but with a case where consent was really given, though claimed to have been affected by a vice which authorizes and permits the revocation or breaking of the contract. Speaking upon this subject of consent by

reason of error, fraud or violence Marcade, under Art. 1109, C. N., says: "Les commentateurs ont trop souvent oublié qu'il ne s'agit pas ici du défaut de consentment, mais seulement des cas ou le consentement, récllment donné, se trouve 'affecté d'un vice qui permet de le faire révoquer et de faire briser le contrat. C'est évident puisque la loi parle d'un consentment qui n'est *pas valable,* cu qu'il *a été donné* par l'effet de l'erreur de la violence ou do dol. * * * Si le consentment été donné (par quelque cause que ce soit), il existe pour qu'ily ait lieu de se demander s'il est ou n'est par valable. * * * ` D'ailleurs, si le consentement n'existait pas le contrat ne se serait pas formé, l'obligation ne serait pas née, et par conséquent, il ne paurrait pas être question de faire annuler le contrat et d'étiendre l'obligation. Or la loi nous dira plus loin que l'action en nullité pour erreur, violence ou doi, est une des causes *d'extinction* d'obligation, et que si cette actian n'est pas *intentée* dans les 10 ans. le contrat et l'obligation qu'l a fait naital contimment de subsister.''

The difference between *defective consent* and *absolute want of consent* is here distinctly noted. The subject is discussed at length by the author, but we only cited enough to show the character of the general conclusions reached.

*Article 1881* of our own Code declares that " engagements made through error, violence, fraud or menace are not absolutely null, but are voidable by the parties, who have contracted under the influence of such error, violence or menace, or by the representatives of such parties," and the next, *Art. 1882,* announces that " they may be *avoided* either by exception to suits brought on such contracts or by an action brought for that purpose."

Under these articles a contract entered into under the influence of error, fear, violence or menace, stands until set aside. Assuming that plaintiff in this case under its evidence would be entitled to a judgment, our decree would not conform to the exact prayer of his petition. We would not decree the marriage absolutely null *ab initio,* but we would, by our decree, avoid it.

In view of this fact the plaintiff must be, for the time being, at least, held to be the husband of the defendant, and not competent to testify.

We have already stated that prior to the marriage no affidavit had been made against the plaintiff, nor had he been arrested. If his action in consenting to the marriage was based upon fear or violence

it was of a prospective affidavit, arrest and prosecution. We do not know whether an affidavit would have been made and an arrest and prosecution would have followed, nor of what crime he would have been charged. He says he was threatened with prosecution for a "felony," but he does not say what the particular felony was.

We do not know what the actual relations between husband and wife were prior to the marriage ceremony. There is no doubt that friends and connections of the wife charged him with their having been of such a character as to throw him under the penalties of the criminal law, and that they threatened him with a criminal prosecution. Matters never went far enough for us to know what the charge would have been had the facts been fully stated and disclosed to the recorder—whether it would have been under Act No. 134 of 1890 or Sec. 787 of the Revised Statutes.

As the accusation in point of fact was not made, it would be difficult to say whether if made, and as made, there would be probable cause for it. That Honoré Lacoste was very apprehensive as to the issue of the charge is undoubted.

"*Article 1856* says that if the violence used be only a legal constraint, or the threats only of doing that which the party using them had a right to do, they shall not invalidate the contract. A just and legal imprisonment or threats of any measure authorized by law and the circumstances of the case are of this description."

The next article declares, however, that "the mere forms of law to cover coercive proceedings for an unjust and illegal cause, if used or threatened in order to procure the assent to a contract, will invalidate it. An arrest without cause of action, or a demand of bail in an unreasonable sum, or threats of such proceeding, by this rule, invalidate a contract made under their pressure."

Bishop on Marriage and Divorce, Vol. 1, Chapter XI, paragaph 212, speaking of force, lawful or unlawful, says: "Force to constitute in law duress must be unlawful. A contract, for example, to free the maker from a lawful arrest, or to avoid such threatened arrest, is not, therefore, invalid. And a man lawfully arrested on a process for bastardy or seduction can not if he marries the woman to procure his discharge have the marriage declared void as procured by duress. Nor is it otherwise though he have a good defence and enters into the marriage simply to avoid being imprisoned under the process, and he afterward discovers that he might have made his

defence successful.  But if the process of arrest is void, or otherwise the imprisonment is unlawful, and he marries the woman to regain his liberty, the marriage will on his prayer be set aside.  Perhaps the same result will follow if the arrest, while not technically illegal, is both malicious and without probable cause.''  The author cites in support of the views thus expressed:   The State vs. Davis, 79 N. C. 603; Johnson vs. Johns, 44 Texas, 40; Sickles vs. Carson, 11 C. E. Green, 440; Dies vs. Winne, 7 Wendell, 47; Williams vs. State, 44 Alabama, 27, and in the note to the section he says: ''It is so where he marries a woman he has seduced through fear of the penal consequences.''   Hennett vs. Hennett, 33 Arkansas, 156.

An examination of the record does not satisfy us that the principle announced in *Art. 1857* finds application in the case before us.   It may be true that plaintiff was not fully willing to marry the defendant, but having consented to do so, and having done so, there is nothing before us which would warrant his avoiding the marriage.

We do not regard the exception of misjoinder of any special importance in the case.   We think the husband and wife were authorized to stand in judgment without the necessity of being represented by their tutors.   The same principle by which the husband's testimony was excluded places them *both* before the court for the purposes of this suit, as under their present *status* capable of suing and being sued.  The mother of the plaintiff has no personal interest in the suit.   Even if her consent to the marriage had been extorted by threats and violence, that fact would not have had the effect of invalidating it.  We have reached the conclusion that the judgment appealed from is correct, and it is hereby ordered, adjudged and decreed that it be and is hereby affirmed.

### ON APPLICATION FOR REHEARING.

A re-examination of this case has brought us to the conclusion that the interests of justice would be best subserved by setting aside the judgment heretofore rendered by us, so as to remand it to the lower court for further proceedings in some respects.   We think that under all the facts of this special case we did not sufficiently take into consideration the youth of the defendant, in dealing with his consent to the marriage when threatened with criminal prosecution.   In remanding the case we think it not amiss to say that defendant's departure for Europe after the marriage, and after this

suit was instituted, and placing himself beyond the reach of the criminal prosecution which was stayed by his marriage, was one of the facts in evidence which, though not mentioned in the opinion, attracted our attention and impressed us very unfavorably against his claim that the prosecution was utterly void of all foundation. We think it right that the actual relations of the parties prior to the ceremony should, if possible, be brought to light. For that reason it is hereby ordered, adjudged and decreed that the judgment heretofore rendered by us be set aside, the judgment of the lower court reversed, and this cause is hereby remanded to the District Court, for the purpose of having shown the actual relations of the plaintiff and defendant prior to the marriage ceremony and for the purpose of ascertaining and determining whether or not the threatened prosecution was authorized by law, and the circumstances of the case, or used to procure plaintiff's consent to the marriage by threats of using the mere forms of law to cover coercive proceedings for an unjust and illegal cause. A rehearing being unnecessary in view of the present action of the court, the application therefor is refused.