STATE v. WALTER BEAM.

(Filed 25 May, 1921.)

1. **Criminal Law—Husband and Wife—Abandonment—Statutes—Limitation of Actions.**

    Where a man willfully abandons his wife, sends remittances for her support, returns and lives with her as man and wife for a while, and again abandons her, his willfully leaving her the second time without providing an adequate support for her is a fresh "abandonment and failure to support," made a misdemeanor by C. S., 4447, and an indictment found within two years therefrom is not barred by the statute of limitations.

2. **Criminal Law—Husband and Wife—Abandonment—Actions—Venue—Courts—Jurisdiction.**

    Where a man willfully abandons his wife in this State and fails to send her funds for an adequate support, when he was residing in another State, he cannot direct her choice of residence and is indictable under the laws of this State in the county of her residence. C. S., 4447.

3. **Criminal Law—Husband and Wife—Abandonment—Justification.**

    A conviction of a willful abandonment by the husband of his wife is equivalent to a finding that he has left her without justification. C. S., 4447.

4. **Criminal Law—Husband and Wife—Abandonment—Support—Indictment—Evidence—Burden of Proof.**

    Upon a trial under an indictment of the husband for the abandonment of his wife (C. S., 4447), both the fact of willful abandonment and that of failure to support must be alleged and proved, the abandonment; being a single act and not a continuing offense, day by day, but the duty to support being a continuing one during the marital union, to be performed by him unless relieved therefrom by legal excuse; and his willful abandonment and failure to provide constitutes the statutory offense.

APPEAL by the defendant from *Long, J.,* at July Term, 1920, of BUNCOMBE.

This is an indictment of the defendant for the willful abandonment of his wife without providing adequate support for her. C. S., 4447.

They were married on 25 January, 1912, and he abandoned her on 5 April, 1916, but they lived together a short time in the fall of 1916, when he again abandoned her and went to Georgia to live, the wife remaining in Asheville, N. C. The defendant provided his wife with money by remittances from time to time for her support. These contributions were made to a time within the two years next preceding the finding of this indictment. There was a verdict of guilty, and from the judgment defendant appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*Mark W. Brown for defendant.*

WALKER, J. There are only two material questions in the case:

1. Is the prosecution barred by the statute of limitations? This was presented in several ways by the defendant, who set up the bar. The facts bearing upon this contention are that defendant willfully abandoned his wife at Asheville, where they lived, in April, 1916, and went to the State of Georgia, making his home there. He promised to send her money from time to time for her support, and did so until they became reconciled in the fall of that year for a short while, a few days, and during that time lived and cohabited together as man and wife, when he again abandoned her and returned to Georgia, but continued to make regular remittances of money to her at Asheville for her support and maintenance until a time within two years before this indictment was found by the grand jury, when he ceased to do so. This failure on his part to continue in the performance of his duty to support her was, in law, a fresh act of "abandonment and failure to support" within the meaning of the statute (C. S., 4447), and it has been so expressly held upon a state of facts identical with those we find in this record. *S. v. Davis,* 79 N. C., 603; *S. v. Hannon,* 168 N. C., 215.

2. The other position also is untenable. The fact that defendant lived in Georgia, from which State the remittances were made, has not the effect of making it a Georgia transaction, so as to bar this prosecution under our statute or to oust the jurisdiction of our courts. He promised to send the money to her at Asheville, and did so for some time until he changed his mind and broke his promise. The money was due and to be paid at Asheville in this State, and should have been paid there, and his failure to do so and to provide for her support at her home, which was in Asheville, constituted the statutory offense. This very question was decided in *People v. Meyer,* 33 N. Y. Supp., p. 1123, it being a criminal proceeding for a like offense as here, that is, abandonment without providing for the wife's support. *Judge Goff* said: "This

was separation, not abandonment; and so long as the appellant continued to pay the stipulated sum he did not abandon his wife. Whether the separation took place in the city of Brooklyn or in the city of New York is immaterial. The material question is, Where did the abandonment take place if the appellant did abandon his wife? The evidence shows that after the separation the wife left Brooklyn and took up her residence in New York, and that at the time when the complaint was made she was actually residing in the latter city. The appellant was bound to pay the stipulated sum to his wife no matter where she resided. He, having agreed to the voluntary separation, was precluded from controlling her choice as to a place of residence. His domicile was no longer her domicile, and therefore she had a right to take up her residence in New York. It is conceded that he failed to pay the stipulated $15 per week, that by his own action he reduced the payment to $12 per week, and finally offered her $3 a week, which the trustee refused. The criminal law cannot enforce the observance of contracts; neither will the authorities institute or prosecute proceedings of a criminal nature for such a purpose. Did the appellant abandon his wife and child in the city of New York without providing for and furnishing them with adequate means of support, so that there would be danger of their becoming a burden on the public? That was the question for the magistrate to decide, and he decided it affirmatively and, in my opinion, correctly." With more reason can it be said that where the husband willfully abandons his wife he cannot direct her choice of residence. It would be allowing him to take advantage of his own wrong, if we should so decide. The crime, therefore, was committed in Buncombe County, where she lived. The jury convicted him of willful abandonment of and failure to support his wife, which means that his acts were without justification.

There are two elements of this offense—willful abandonment and failure to support—and both must be alleged and proved. *S. v. Toney,* 162 N. C., 635; *S. v. May,* 132 N. C., 1021; *S. v. Smith,* 164 N. C., 476; *S. v. Hopkins,* 130 N. C., 647. Abandonment is not a continuing offense, day by day (*S. v. Hannon,* 168 N. C., 215), but the duty to support the wife is a continuing one during the existence of the marital union, and must be performed unless there is some legal excuse for nonperformance of it, and when defendant withdrew his support from his wife he became indictable under the statute, even though he lived in another State and had kept his promise and supported his wife for several years. His last delinquency must fix the beginning of his criminal liability.

No error.